IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


MELINDA C. EAKINS                                            PLAINTIFF


        v.                          CIVIL NO. 10-3038


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT

## MEMORANDUM OPINION

        Plaintiff, Melinda C. Eakins, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

**I.        Procedural Background:**

        Plaintiff protectively filed her current applications for DIB and SSI on August 29, 2006,

alleging an inability to work since August 15, 2006, due to an anxiety disorder, a personality

disorder, memory problems, difficulty being in crowds, stress, and pain in the upper back and

shoulder blades.  (Tr. 92-94, 98-100).  For DIB purposes, Plaintiff maintained insured status

AO72A
(Rev. 8/82)

through September 30, 2007.[1]  (Tr. 47).  An administrative hearing was held on June 5, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 6-39).

By written decision dated September 24, 2008, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 49).  Specifically, the ALJ found Plaintiff had the following severe impairments: an affective disorder, a personality disorder, and an anxiety (conduct) disorder.  However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 49).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform work at all exertion levels.  See Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2.  However, based upon the impairments identified above, she must work where instructions are simple and non-complex; interpersonal contact with co-workers and the public is incidental to the work performed; the complexity of tasks is learned and performed by rote; the work is routine and repetitive; there are few variables; little judgment is required; and the supervision required is simple, direct, and concrete.

(Tr. 51).  With the help of a vocational expert, the ALJ determined Plaintiff could perform her past relevant work as a power washer.  (Tr. 54).  The ALJ also determined Plaintiff could perform other work as a small product assembler, a kitchen helper and a meat trimmer.  (Tr. 55).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 17, 2010. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 6).  Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

---

[1]The Court notes that Disability Reports also indicate Plaintiff's date last insured is June 30, 2007, and June 30, 2008.  (Tr. 137, 173).

## II.    Evidence Presented:

At the administrative hearing before the ALJ on June 5, 2008, Plaintiff testified that she was thirty-eight years of age and obtained a high school education. (Tr. 10-11). Plaintiff also attended college but testified that she could not seem to get through speech. (Tr. 11). The record reflects Plaintiff's past relevant work consists of work as a power washer. (Tr. 24).

The medical records dated from 1978 through June of 2006, prior to Plaintiff's alleged onset date of August 15, 2006, revealed that Plaintiff sought treatment for various ailments, some of which include the following: colds, sinusitis, sore throats, back aches, epigastric pain, insect bites, ear infections, pain from a hood of a vehicle falling on her hand, pain and abrasions from being kicked by a horse, injuries as a result of a fight with her sister, and an injured finger as a result of playing basketball. (Tr. 213-235, 239-261).

The medical evidence during the relevant time period reflects the following. On October 2, 2006, the Ahrens Clinic indicated Plaintiff was prescribed Wellbutrin.[2] (Tr. 236).

On November 17, 2006, Plaintiff underwent a neuropsychological evaluation performed by Dr. Vann Arthur Smith. (Tr. 263-264, 298-301). Dr. Smith noted that Plaintiff's medical records had been requested. Plaintiff reported a history of multiple closed head injuries due to a car accident, being hit in the head with a hammer, being hit in the head with a falling rock and numerous assaults by her estranged spouse in which she was struck, pushed and choked into unconsciousness. Plaintiff reported treatment for depression and that she experienced chronic pain in her neck, mid back, hips, and weight bearing joints. Plaintiff also reported episodic

---

[2]The Court notes this medical note consists of just the prescription for Wellbutrin. The most recent prescription for Wellbutrin prior to October of 2006, was sometime in early 2003. (Tr. 240).

AO72A
(Rev. 8/82)

impulse dyscontrol, frequent "deja vu" experiences, and recurrent incomplete auditory hallucination.  Upon evaluation, Dr. Smith noted Plaintiff's memory was mildly impaired; her judgment and insight were grossly intact; and her affect was muted but flexible.  Dr. Smith opined Plaintiff's native intelligence was estimated to lie within the normal range.  Dr. Smith diagnosed Plaintiff with a cognitive dysfunction, non-psychotic, secondary to a general medical condition.

Dr. Smith also completed a mental RFC questionnaire opining that Plaintiff's current global assessment of functioning score was, 40-45, and her highest was 65-70.  (Tr. 265-269, 302-307).  Dr. Smith opined Plaintiff's prognosis was fair.  Dr. Smith noted Plaintiff's signs and symptoms were as follows: mood disturbance; difficulty thinking or concentrating; psychological or behavioral abnormalities associated with a dysfunction of the brain with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities; easy distractibility; memory impairment-short, intermediate or long term; and sleep disturbance.  Dr. Smith opined Plaintiff was seriously limited, but not precluded or unable to meet competitive standards in sixteen of twenty-five areas of functioning.  Dr. Smith further opined Plaintiff would miss work about four days per month due to her impairments.  Dr. Smith opined that Plaintiff's clinical history of multiple closed head injuries over the course of years was consistent with the abnormal findings seen in her neuropsychological profile.  Dr. Smith noted Plaintiff had diffuse impairments of attention, concentration and memory.  Dr. Smith opined Plaintiff was unable to sustain focus on any type of job related behavior.  Dr. Smith opined Plaintiff was disabled. (Tr. 269).

On December 18, 2006, Plaintiff underwent a consultative mental status and evaluation

-4-

of adaptive functioning examination performed by Dr. Robert L. Hudson.  (Tr. 270-273).  Dr.

Hudson noted Plaintiff was casually but cleanly dressed in appropriate clothing for the season.

Plaintiff drove herself to the interview.  Dr. Hudson noted Plaintiff was a half hour late due to

not being able to find the examiner's office.  Plaintiff had called from a gas station across the

street to get directions.  Plaintiff reported she had been working as an office cleaner for the past

three weeks and was able to perform her duties after the office workers had gone home.

Plaintiff reported she was not seeing a mental health professional but she was taking

Wellbutrin which was prescribed by someone at Ahrens Clinic.  Plaintiff reported she had taken

Wellbutrin before to stop smoking, which she successfully did for a few months.  Dr. Hudson

noted that Plaintiff had a long history of anxiety related to but not restricted to groups of people,

and that she had been unable to receive her associates in arts degree from the community college

because she could not complete her speech class that required her to stand up in the front of the

class.  Plaintiff also reported a long history of working jobs for only days or weeks at a time.

Plaintiff reported that she started seeing a psychiatrist when she was sixteen as a result of some

behavioral problems that she was having at that time.  Plaintiff also reported that she had never

seen herself as someone who might be brain damaged, but when she saw Dr. Smith he suggested

that the beatings, including choking, that she had received from her soon to be ex-husband could

have the same effect over time.

Dr. Hudson noted Plaintiff was pleasant and smiled and laughed appropriately on

occasion.  Dr. Hudson opined that Plaintiff did not seem to be well in control of her emotions.

Plaintiff's thought content was noted as generally logical and goal directed.  Dr. Hudson reported

that there was no indication of a thought disorder but he noted that part of Plaintiff's anxiety

being out among people was that she was being looked at by others. Plaintiff reported that she also had a strong desire for things at home to be clean and straight and that she had yelled at her sons and even thrown things from exasperation. Plaintiff reported that she enjoyed hiking with her boys and doing other outdoor activities with them. Plaintiff also reported that she watched some television and that she preferred comedies. Dr. Hudson noted that Plaintiff denied any head injury, coma, concussion, high fever other than the possible damage from choking by her husband. Dr. Hudson noted Plaintiff was able to name current events; able to immediately recall 3/3 words and 0/3 words after five minutes; able to name five large cities and three current personages; and able to do simple arithmetic quickly and correctly. Dr. Hudson diagnosed Plaintiff with the following: Axis I: conduct disorder, mood disorder and anxiety disorder; Axis II: personality disorder; and Axis III: rule out brain damage from anoxia and/or other source, headaches. Dr. Hudson opined Plaintiff's prognosis was poor because she was not being treated adequately, otherwise it would be fair but guarded.

Regarding Plaintiff's adaptive functioning, Dr. Hudson had nothing to remark about Plaintiff's communication. Dr. Hudson noted Plaintiff got along with her parents and teachers until her teenage years when she became anxious being around people. Plaintiff reported when she went to college later she was more comfortable but preferred smaller classes. Plaintiff reported she could take care of her personal needs; drive in her area but not in a big city; and could count change but not manage a checkbook. Plaintiff reported she was not limited on household chores and that she shopped on Sunday at the grocery store because there were fewer people. Dr. Hudson had no remarks regarding Plaintiff's physical development. Dr. Hudson noted Plaintiff's concentration was mixed and her pace and persistence were within normal

-6-

limits. With regard to Plaintiff's cognition, Dr. Hudson stated that Plaintiff was not mentally retarded but she might have some cognitive deficits and referred to Dr. Smith's report that he himself did not review.

On December 20, 2006, Dr. Kay M. Gale, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and had no episodes of decompensation. (Tr. 277-290). Dr. Gale's notes indicated the following:

> Claimant has no mental health treatment. On recent exam she is given diagnoses of mood disorder NOS, anxiety disorder NOS, and personality disorder NOS. She describes significant discomfort around others. Capable of at least unskilled work in setting with limited contact with others.

(Tr. 289).

On the same date, Dr. Gale completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public. (Tr. 291-294). Dr. Gale concluded that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, with few variables, uses little judgment; supervision required is simple, direct and concrete." On April 12, 2007, after

-7-

reviewing the record, Dr. Dan Donahue affirmed Dr. Gale's December 20, 2006 assessment.  (Tr. 297).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

-8-

1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**IV.   Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

**A.     Subjective Complaints and Credibility Analysis:**

We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's

subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that her impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's alleged mental impairments, the record establishes that besides the two consultative evaluations, Plaintiff has not sought treatment for her allegedly disabling mental impairments.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability); Melton v. Apfel, 181 F.3d 939, 941 (8th Cir. 1999) (holding that plaintiff's failure to seek consistent medical treatment weighed against his subjective complaints).  The ALJ pointed out that while Plaintiff had been prescribed Wellbutrin by the Ahrens Clinic in the past (Tr. 236), Plaintiff reported to Dr. Hudson during her consultative examination that the Wellbutrin had been prescribed to help her stop smoking which had been successful for a few months.  (Tr. 270).

It is also noteworthy that medical records dated from at least 2000, from the Ahrens Clinic, indicated that prior to the alleged onset date, Plaintiff sought treatment for various problems, for example ear aches, spider bites, sore throats, some back aches, nasal congestion, but did not report any on-going mental problems.  The record also reflects that Plaintiff started

-10-

working as a server, for thirty hours a week, at a restaurant in April of 2008, and that she was still working as a server in May 2008. (Tr. 183, 187).

Furthermore, while Plaintiff alleged an inability to seek mental health treatment due to a lack of finances, the record was void of any indication that Plaintiff had attempted to seek treatment at a free clinic or had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). After reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's mental impairments are not disabling.

With regard to Plaintiff's alleged back and shoulder impairments, the medical evidence failed to show that Plaintiff sought treatment for her alleged back and shoulder problems during the relevant time period. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). Furthermore, it appears Plaintiff only took over-the-counter medication for her alleged disabling pain. See Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) ( lack of strong pain medication was inconsistent with disabling pain). Thus, while Plaintiff may experience some pain, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling back or shoulder impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. In a Function Report dated January 27, 2007, Plaintiff reported she was able to get her children dressed, fed, and off to school; to take care of her personal needs; to prepare simple

-11-

meals; to do household chores such as cleaning, doing laundry and washing dishes; to walk and drive locally; to shop at the grocery store; to read and watch television daily; and that while she did not like to be in public, she did spend time with her family and parents weekly to monthly. (Tr. 148-155). Plaintiff also reported that she could pay bills, but that she could not manage a checkbook. It is noteworthy that during her consultative evaluation with Dr. Hudson, Plaintiff reported that she was not limited in doing any household chores; and that she liked to go hiking with her boys and doing other outdoor activities with them. This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application was supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability). Furthermore, Plaintiff also reported in a work background form that she started to work as a server at a restaurant in April of 2008; and at the administrative hearing in June of 2008, Plaintiff testified that she had worked for her minor son's power washing business in 2004-2005 and again in 2007. (Tr. 14, 18, 183). We note, seeking work and working at a job while applying for benefits are activities inconsistent with the complaints of disabling pain. See Naber v. Shalala, 22 F.3d186, 188 (8th Cir.1994) (while an intention to return to work is laudable, it proves that the claimant is able to work and, therefore, is inconsistent with a claim that the claimant cannot engage in any kind of substantial gainful work)

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she

-12-

has not established that she is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability).  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

     **B.**    **RFC Assessment:**

     We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

     In the present case, the ALJ considered the medical assessments of Plaintiff's treating physician, examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when she determined that Plaintiff could perform work at all exertional levels with some limitations.

In deciding not to give controlling weight to Dr. Smith's opinion that Plaintiff was seriously limited, but not precluded or unable to meet competitive standards in sixteen of twenty-five areas of functioning, and that Plaintiff was therefore disabled, the ALJ noted that Dr. Smith's findings were not consistent with the record as a whole.  Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)(the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).  Specifically, the ALJ pointed out that the medical evidence of record did not document the concussions referenced by Dr. Smith; and Dr. Smith's report did not discuss, in a meaningful manner, Plaintiff's past employment activities and the cognitive level required for those activities. (Tr. 53). The ALJ also noted that a review of Dr. Smith's assessment and findings indicated that Dr. Smith based a large part of his analysis on Plaintiff's subjective report of her medical history which was otherwise unsupported by verifiable objective medical evidence of record.   Accordingly, the ALJ afforded Dr. Smith's opinion little weight.  In further support of this decision, the ALJ noted that Dr. Smith's report was in conjunction with a one-time visit and that there was no treating physician relationship.

As noted by Defendant, courts have affirmed decisions in which one-time examination reports from Dr. Smith were accorded little weight. See Hudson v. Barnhart, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing psychologists").  In Clement v. Barnhart, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other

-14-

AO72A
(Rev. 8/82)

medical evidence in the record, and was inconsistent with Clement's reported daily activities." Id. at *1.  District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Smith's opinions.  See Cole v. Astrue, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(held that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record);  Partee v. Astrue, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(held that the ALJ clearly recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith);  Haarstad v. Astrue, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009).  The court in Cole also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." 2009 WL 3158209 at *8, n.1.  The undersigned is of the opinion that this is exactly what the ALJ did in the present case.

Furthermore, the ALJ also addressed the report completed by Dr. Hudson who found that Plaintiff's concentration was mixed but her persistence and pace were within normal limits.  With regard to Plaintiff's cognition, Dr. Hudson stated that Plaintiff was not mentally retarded but that she might have some cognitive deficits and referred to Dr. Smith's report that he himself did not review.  Dr. Hudson did not specifically find that Plaintiff had any cognitive deficits.   The ALJ also addressed the RFC assessments of Drs. Gale and Donahue, who did not have the benefit of examining Plaintiff but did, unlike Dr. Smith, have the benefit of having Plaintiff's entire medical records before them prior to completing their assessments regarding Plaintiff's capabilities.

Based on our above discussion of the medical evidence and Plaintiff's activities throughout the relevant time period, the Court finds substantial evidence of record to support the ALJ's RFC

-15-

determination.

### C.       Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments do not preclude her from performing work as a small product assembler, a kitchen helper and a meat trimmer.    Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 22nd day of July 2011.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-